UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80758-Civ-Hurley/Hopkins

ERNEST CADET,

        Petitioner,

vs.

 

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS,

        Respondent.

_____/

FILED by _____ D.C.

JUN - 1 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION REGARDING PETITIONER'S EQUITABLE TOLLING CLAIM FOLLOWING ELEVENTH CIRCUIT REMAND (DE 1)

**THIS CAUSE** initially came before this Court upon an Order dated June 30, 2008 referring the instant Petition for Writ of Habeas Corpus brought under 28 U.S.C. § 2254, to the undersigned United States Magistrate Judge for a Report and Recommendation. (DE 2).

On August 12, 2008, this Court recommended that the petition be dismissed as time-barred. (DE 10). On September 22, 2008, Petitioner filed an objection to this Court's Report and Recommendation, claiming that the doctrine of equitable tolling should apply. (DE 17). On October 9, 2008, the District Court recommitted the matter to this Court for a determination on the issue of equitable tolling. (DE 18). On January 6, 2009, this Court again recommended that the Petition be dismissed. This Court relied on *Holland v. Florida*, 539 F.3d 1334, 1338 (11th Cir. 2008), and determined that there was no basis for applying equitable tolling. (DE 24). The District Court adopted this Court's recommendation, but granted Petitioner's motion for a certificate of appealability. (DE 25, 27).

Thereafter, Petitioner appealed the dismissal of his Petition to the Eleventh Circuit, which vacated the District Court's order, and remanded the case for reconsideration of Petitioner's equitable tolling claim in light of the Supreme Court's recent decision in *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549 (2010), which struck down the equitable tolling standard previously applied by the Eleventh Circuit. The equitable tolling issue was subsequently recommitted to this Court for a Report and Recommendation. (DE 38).

This Court scheduled an evidentiary hearing on Petitioner's equitable tolling claim, and appointed the Federal Public Defender to represent Petitioner. (DE 44).[1] At the hearing, held on March 28, 2012, the Court considered whether (1) Petitioner exercised due diligence in pursuing his rights and (2) some extraordinary circumstance prevented him from timely filing his Petition. This matter is now ripe for this Court's review.

## BACKGROUND

Two witnesses testified at the evidentiary hearing: Petitioner and his appellate attorney, Michael Goodman.[2]

Michael Goodman testified that he has practiced criminal law since 1993. In 2000, he was retained by Petitioner to file a direct appeal of his underlying conviction. Goodman represented Petitioner through the Florida Supreme Court's denial of his appeal in 2002.

---

[1] Because Petitioner's equitable tolling claim involved an allegation that Petitioner's appellate counsel, Michael Goodman, Eq., untimely filed his federal habeas petition based on an incorrect calculation of the statute of limitations, the Court was concerned about a conflict of interest if Mr. Goodman were to represent Petitioner at the evidentiary hearing.

[2] Based in part on the untimely filing in this case, Mr. Goodman has been suspended from the practice of law by the Eleventh Circuit. At the time of the evidentiary hearing, the Florida Bar was also initiating proceedings against Goodman.

Thereafter, Goodman discussed other appellate options with Petitioner, including the pursuit of post-conviction remedies in state court and the filing of a federal writ of habeas corpus.

Goodman testified that Petitioner filed his post-conviction state court motions *pro se*, but that Goodman reviewed them on a *pro bono* basis. Those motions were ultimately denied and Goodman advised Petitioner that his best chance for success would be in federal court. According to Goodman, based on his reading of the AEDPA statute, he believed that Petitioner had one year from the date of exhausting his state court remedies to file a habeas petition in federal court. He advised Petitioner of this time frame "more than once." According to Goodman, Petitioner disagreed with Goodman's calculation, repeatedly telling Goodman that they did not have as much time as Goodman believed. Goodman testified that he and Petitioner had at least five discussions about the timeliness of his federal habeas corpus petition and Goodman kept assuring Petitioner that they had plenty of time.

According to Goodman, Petitioner "forcefully, but respectfully disagreed" with Goodman's calculation of the deadline, repeatedly asking him, "Are you sure? Are you sure?" Petitioner doubted Goodman's calculation because the jailhouse lawyers had advised him that he did not have much time to file a federal habeas petition. Goodman challenged their opinion, asking Petitioner, "who are you going to believe?" On re-direct examination, Goodman testified that Petitioner was "very anxious" and became "insistent" that the habeas petition be filed as soon as possible.

On September 29, 2006, (one month after Petitioner's time to file his federal habeas petition had expired, unbeknownst to Goodman), Goodman sent Petitioner a letter, enclosing the mandate issued by the state appellate court on August 25, 2006, which affirmed the denial of his

state court motion for post-conviction relief under Fla. R. Crim. P. 3.850.  Goodman also

enclosed a copy of the state court docket sheet and the AEDPA statute of limitations for filing a

federal habeas petition.  In his letter, Goodman incorrectly advised Petitioner, "[a]s you can see

you have one year after the denial of your appeal to file for Habeas relief."  *See* Petitioner's

Exhibit 1.

Thereafter, Goodman, working *pro bono*, filed a federal habeas petition on Petitioner's

behalf on August 23, 2007 – one year after the deadline had passed.  At the evidentiary hearing,

Goodman conceded that he had "misread" the rule and that, other than reading the statute, he

conducted no other research to confirm his belief as to Petitioner's time to file.  Goodman said

that when he received the State's response to the petition, which argued that it should be

dismissed as untimely, he could not believe that he had failed to timely file the petition.  At that

point, Goodman conducted additional research, realized his filing had been untimely, and "felt

horrible."

Petitioner also testified at the evidentiary hearing.  He confirmed that his family had

retained Goodman to file his appeal in 2000.  Petitioner stated that Goodman visited him in jail

and that they also communicated by telephone.  Petitioner testified that he had other inmates

helping him on his case and that they warned him that he did not have much time left to file his

federal habeas petition after the appellate court ruled on the denial of his state court motion.

Petitioner relayed this information to Goodman, but according to Petitioner, Goodman always

said that they had a lot of time.

Petitioner testified that after he lost his state court appeal, he and Goodman spoke about

filing a federal habeas petition "many times."  The inmates housed with Petitioner told him to

4

quickly file his petition, but Goodman said "don't listen to them – if they were that good they wouldn't be in prison, they'd be lawyers."

According to Petitioner, Goodman became annoyed because of Petitioner's frequent telephone calls and letters reminding him about the time to file the federal petition. Petitioner testified that they had conversations about the time limits "over and over." Petitioner testified that, eventually, he decided to trust Goodman's calculation of the deadline because he was a licensed attorney.

## DISCUSSION

As noted above, in order for equitable tolling to apply to an untimely petition for a writ of habeas corpus, a petitioner has the burden of proving: (1) that he was diligent in pursuing his rights and (2) that some "extraordinary circumstance" prevented him from timely filing his petition. *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2562 (2010). Given that the doctrine applies only in "extraordinary circumstances" indicates the rarity with which it is used; as courts have noted, the threshold to trigger the remedy is "very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (2009)(*quoting Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)). Application of equitable tolling is discretionary and because it "turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules" of application. *Goedeke v. McBride*, 437 F. Supp. 2d 590, 596 (S.D. W.Va. 2006)(*quoting Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

### 1.  Petitioner's Due Diligence

With regard to the first prong of the analysis, the Supreme Court has stated that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible

diligence.'" *Id.* at 2565 (*quotations and citations omitted*). In *Holland*, the Court found that the petitioner was diligent based on: (1) the numerous letters he wrote to his attorney "seeking crucial information and providing direction;" (2) his repeated efforts to contact the state courts, their clerks, and the Florida State Bar Association in an effort to have his attorney (whom the Court characterized as "the central impediment to the pursuit of his legal remedy") removed from his case; and (3) his decision to prepare his own habeas petition *pro se* and file it with the District Court. *Id.*

Here, based on the undisputed facts adduced at the evidentiary hearing that Petitioner repeatedly argued with Goodman about his calculation of the deadline and his insistence that the petition be filed immediately, the Court finds that Petitioner demonstrated reasonable diligence in his efforts to file a timely petition. *See Downs v. McNeil*, 520 F.3d 1311, 1323 (11th Cir. 2008)(petitioner demonstrated due diligence by writing multiple letters to "express concern over the running of the AEDPA filing period and to urge the filing of his federal habeas petition"); *Goedeke*, 437 F. Supp. 2d at 594 (equitable tolling allowed where on "multiple occasions" petitioner asked appellate attorney whether there was a habeas deadline and attorney repeatedly assured him there was not). *Cf. Taylor v. Fox*, 2009 WL 6315313, *4 (N.D. W.Va. Nov. 23, 2009)(no equitable tolling where petitioner knew about the statute of limitations from jailhouse lawyers but failed to inform his appellate attorney or inquire further about it).

## 2. Extraordinary Circumstances

The second prong of the equitable tolling analysis requires the existence of "extraordinary circumstances" that prevented the petitioner from effectuating a timely filing. The Court in *Holland* reiterated the general rule that "a garden variety claim of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling" and

that an attorney's failure to file a habeas petition on time merely because he was "unaware of the date on which the limitations period expired," is a fact that, "alone, might suggest simple negligence." *Holland,* 130 S. Ct. at 2564.  However, the Court also indicated that, under certain circumstances, an attorney's failure to "satisfy professional standards of care" may be sufficient to warrant equitable tolling, because "at least sometimes, professional misconduct" can be so egregious as to "create an extraordinary circumstance that warrants equitable tolling." *Id.* at 2562-63.

In *Holland*, the Court found that the record established "far more serious instances of attorney misconduct," and not just a "garden variety claim" of attorney negligence. *Id.* The Court identified exacerbating circumstances that went beyond simple negligence. Specifically, the Court noted that the petitioner sent his attorney "many letters that repeatedly emphasized the importance" of filing his petition in a timely fashion; nevertheless, the attorney did not research the proper filing date, even though the petitioner provided him with the applicable legal rules. Despite the petitioner's repeated pleas for information, the attorney in *Holland* failed to inform his client in a timely manner that the Florida Supreme Court had issued its ruling, and he failed to communicate with his client over a period of years. The Supreme Court concluded that, under those circumstances, the attorney's conduct "seriously prejudiced" the petitioner. *Id.* at 2565.[3]

---

[3] Because the district court denied equitable tolling based solely on its finding that Holland had failed to exercise due diligence (a conclusion reversed by the Supreme Court), the Supreme Court did not render a definitive ruling on whether Holland's attorney's conduct amounted to extraordinary circumstances. However, on remand, the district court in *Holland* found that the petitioner's attorney "effectively abandoned [him] in the months leading up to the Florida Supreme Court's rejection of Holland's post-conviction appeal, [which was] the event that set the clock running on the remainder of the AEDPA limitations period." *Holland,* 1:06-cv-20182-Seitz (S.D. Fla. Nov. 23, 2010). Thus, the court concluded that the attorney's failure to timely file a federal habeas petition "did not arise from a simple arithmetical miscalculation or failure to adequately research, but an utter failure to attend to reasonable requests from the client he was obligated to represent." *Id.*

Unlike *Holland*, the record here demonstrates that Goodman did not actually abandon Petitioner. Rather, the testimony at the evidentiary hearing revealed that Goodman and Petitioner communicated frequently about the filing of the federal habeas petition. Petitioner testified that Goodman visited him in prison and, unlike the attorney in *Holland*, Petitioner testified that Goodman accepted Petitioner's collect calls.[4] Moreover, although they could only produce one letter at the evidentiary hearing, both Goodman and Petitioner testified about the numerous letters they exchanged.

However, the Court is mindful that constructive abandonment can be just as detrimental to a petitioner's timely filing as actual abandonment. Several recent cases address an attorney's constructive abandonment of his client in the filing of a federal habeas corpus petition.

First, in *Nickels v. Conway*, 2012 WL 1592929 (2nd Cir. May 8, 2012), the Second Circuit deemed the petitioner to be effectively abandoned despite frequent communication from his appellate attorney. In *Nickels*, the appellate attorney advised his client that "[a]lthough timeliness is a serious factor," in the filing of his habeas petition, they should focus on "quality over speed." The Second Circuit found "[s]uch a representation about the importance of Section 2254's statute of limitations [was] both wrong and highly prejudicial" to the petitioner. *Id.* at *1. Moreover, a month after the filing deadline passed, appellate counsel continued to advise the petitioner to "relax and be patient," which the Second Circuit deemed a "failure of both competence and diligence." *Id.* The Court recognized that although there were "a long series of letters in the record, none of these letters gave [petitioner] the information necessary to make informed decisions about his representation" because

---

[4] *See Holland*, 130 S. Ct. at 2557 ("Holland tried to call Collins from prison. But he called collect and Collins' office would not accept the call.").

he was not apprised of the "true state of his petition or of the law surrounding it." *Id.*  The Court

concluded that although the petitioner was "constantly apprised that his petition was almost done

[and] that timeliness was not crucial," his attorney's failings amounted to abandonment and

constituted extraordinary circumstances. *Id.* at *2.

A similar conclusion was reached in *Goedeke v. McBride*, 437 F. Supp. 2d 590 (S.D. W.Va.

2006).  There, the court found that the appellate attorney's

> representation, or lack thereof, cannot be characterized as simple
> attorney negligence. He failed to represent his client over the course
> of six years despite constantly telling his client otherwise . . . his
> claims that he arduously was working on [the] petition throughout the
> six-year period [is] incredible . . . [there was] no evidence to show
> that [he] actually worked on [petitioner's] case other than . . . short
> letters that said progress was being made . . . [a]lthough [he]
> "represented" [petitioner] for more than six years, [petitioner] would
> have been in the same position had he never had an attorney.

*Goedeke*, 437 F. Supp. 2d at 598.  The court in *Goedeke* even suggested that the petitioner would

have been in a *better* position had his attorney "completely abandoned" him, instead of "consistently

coerc[ing] [him] into believing that his petition was almost ready." *Id.*  The court found that

counsel's "repeated assurances constitute[d], at best, extreme exaggerations and most likely false

representations" and thus, it was one of those "the rare situation[s]" warranting equitable tolling.

*Id.* (counsel's "constant assurances coerced [petitioner] into a false sense of trust," which the court

concluded was "even more severe than completely abandoning his client").  *See also McLaughlin*

*v. Lee*, 2000 WL 34336152, *3 (E.D.N.C. Oct. 19, 2000)(court allowed equitable tolling where

appellate attorney made empty promises that he would protect his legal interests and file motions for

appropriate relief but actually "placed [p]etitioner in the extraordinary situation of believing that he

had counsel when, in fact, he had counsel in name only").

Although in this case, Goodman did ultimately file the petition (albeit one year late), the effect of his hollow assurances was sufficiently similar to these cases to warrant the same result. Here, Goodman repeatedly reassured Petitioner that his cursory reading of the statute was correct. Despite Petitioner's consistent inquiries and insistence that Goodman was mistaken, Goodman did not reconsider his calculation of the filing deadline or conduct additional legal research to confirm his calculation. This Court finds that Goodman's reassurances – which Goodman concedes were based on nothing more than an initial reading of the statute – demonstrate a lack of diligence and competence that amounts to extraordinary circumstances.

Given these exacerbating factors, the Court finds that this is more than mere "garden variety" negligence. While Goodman's initial misreading of the statute was simple attorney error in determining the deadline which, by itself, would likely not rise to the level of extraordinary circumstances, that error was compounded by Goodman's failure to further investigate or conduct confirmatory research when faced with Petitioner's doubts, and in ultimately offering Petitioner false and unfounded reassurance. *See Baldayaque,* 338 F.3d at 152 ("simple mistakes about the rules applied to the deadlines for filing a habeas petition . . . are ordinary," but "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary"). The Court finds that Goodman's empty assurances amounted to nothing more than lip service and that his "representation" of Petitioner during that critical period was devoid of any meaningful or accurate legal advice. The Court finds that Goodman's hollow representation amounted to constructive abandonment, which is such an extraordinary circumstance, that it will relieve a client of his attorney's errors because "a client cannot be charged with the acts or omissions of any attorney who has abandoned him." *Maples v. Thomas,* __ U.S. __, 132 S. Ct. 912, 924 (2012).

10

## CONCLUSION

Based on the foregoing, this Court finds that the circumstances below warrant the imposition of equitable tolling and **RECOMMENDS** that the District Court consider the merits of the Petition.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *see also see also* Fed. R. Civ. P. 72(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** in Chambers this 1 day of June, 2012, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to: Counsel of Record

The Hon. Daniel T. K. Hurley, U.S. District Court Judge for the Southern District of Florida